UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| A.P. LENARD, L.L.C. | : | CIVIL ACTION NO. 17-0958 |
| VS. | : | JUDGE ROBERT G. JAMES |
| BEFESA INDUSTRIAL SERVICES USA, INC. | : | MAG. JUDGE KAREN L. HAYES |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions: 1) a motion to remand [doc. # 11] filed by plaintiff A.P. Lenard, L.L.C. and 2) a compound motion to dismiss for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), or alternatively, for forum non conveniens filed by defendant Befesa Industrial Services USA, Inc. [doc. # 13]. For reasons that follow, it is recommended that the motions be DENIED.

**Background**

On June 17, 2017, A.P. Lenard, L.L.C. ("APL") filed the instant petition to recover an estimated $1,146,794 due as of April 30, 2017,[1] under the terms of an April 30, 2015, "Operating Agreement" (hereinafter, the "Contract") entered into between APL and Befesa Industrial Services USA, Inc. ("Befesa"). (Petition). According to the Contract, APL and Befesa agreed to combine their experiences and resources to establish a joint venture in the "Oil & Gas for Solids Controls" sector within the United States and Canada. (Contract, Recital VI, Clauses One, Two, and Five; Petition, Exh. A). Towards that end, the parties agreed to create a limited liability company, governed by the laws of the State of Delaware, to be named AP Lenard Befesa Solids Controls Solutions (hereinafter, "BEFAP" or "joint venture company"). *Id*. The original term of

---

[1] Plus a second estimated payment of $1,146,794 that will be due on April 30, 2018.

the Contract was for one year, but subject to renewal. On April 8, 2016, however, the parties agreed to extend the Contract until April 30, 2017, and APL agreed to contribute to BEFAP all of its line of business in the pipeline reclamation sector. (Addendum to Operating Agreement; Petition, Exh. B).

Nonetheless, on March 27, 2017, Befesa advised APL that it wished to terminate the Contract. (Petition, ¶ 7). In response, APL sent emails to Befesa on multiple dates in April and May 2017, asserting its right to two equal monetary payments measured as a multiple of a percentage of the "EBITDA" of "Befesa USA related to prior BEFAP in the previous fiscal year . . ." *Id.*, ¶ 8. Befesa denied that it owes APL any sums pursuant to the foregoing provision of the Contract.

Accordingly, APL initiated the instant litigation against Befesa in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana. In addition to sums due under the Contract, APL requested general damages, attorney's fees, costs, witness fees, and expenses. On July 26, 2017, Befesa removed the case to federal court on the basis of diversity jurisdiction.

On August 28, 2017, APL filed the instant motion to remand in which it argued that Befesa did not timely remove the suit to federal court. Meanwhile, on September 11, 2017, Befesa filed the instant motion to dismiss for lack of personal jurisdiction, or alternatively, on the grounds of *forum non conveniens*. The motions are opposed. [doc. #s 15 & 16]. On October 12, 2017, Befesa filed a reply in support of its motion to dismiss. [doc. # 19]. The matter is ripe.

## Analysis

**I.     Motion to Remand**

The procedure for removal from state to federal court is governed by 28 U.S.C. §

1446(b), which requires, in pertinent part, that a removal notice be "filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . ." 28 U.S.C. § 1446(b)(1). "The 30 day period in no event begins to run prior to service of process on the defendant." *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 400 (5th Cir.2000) (citing *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 119 S.Ct. 1322 (1999)).

Under various theories, APL contends that it served Befesa with the initial pleading no later than June 20, 2017, and thus, Befesa's removal more than 30 days later (on July 26) was untimely. In contrast, Befesa maintains that it was not properly served until July 17, 2017; therefore, removal was well within the 30 day window.

The court need not resolve the timeliness of removal because, ironically enough, and as Befesa aptly noted, APL waived the issue by not timely raising it within 30 days of removal. Section 1447 provides that, "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). It is manifest that the 30 day removal period is a procedural, not a jurisdictional defect. *Barnes v. Westinghouse Elec. Corp.*, 962 F.2d 513, 516 (5th Cir.1992) ("The time limitation for removal is not jurisdictional; it is merely 'modal and formal and may be waived.'"). Accordingly, APL was required to raise the timeliness issue within 30 days of removal. It did not do so,[2] and thereby waived the alleged procedural defect as a basis for remand. *In re Shell Oil Co.*, 932 F.2d 1518, 1522–23 (5th

---

[2] Befesa filed the notice of removal on July 26, 2017. APL filed the instant motion to remand on August 28, 2017 – one business day beyond the 30 day deadline to raise non-jurisdictional defects in the removal process.

3

Cir.1991).[3]

## II. Personal Jurisdiction

    a)    Law

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant as long as (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state does not transgress due process protections under the United States Constitution. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution. *See* La. R.S. § 13:3201(B). Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over the non-resident defendant comports with federal due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir.2010) (citation omitted).

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citations omitted).

Though minimum contacts may give rise to either "general" or "specific" jurisdiction,[4]

---

[3] Furthermore, it is unquestioned that the court enjoys subject matter jurisdiction via diversity, 28 U.S.C. § 1332. The parties are completely diverse, and the amount in controversy exceeds $75,000. *See* Notice of Removal.

[4] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, ___ U.S. ___, 137 S.Ct. 1773, 1780 (2017).

4

APL argues only the latter, which exists when the "plaintiff's cause of action . . . arises out of or results from the defendant's forum-related contacts." *Willow Bend, L.L.C. v. Downtown ABQ Partners, L.L.C.*, 612 F.3d 390, 392 (5th Cir.2010). Stated differently, "[s]pecific or case-linked jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, ___ U.S. ___, 134 S.Ct. 1115, 1125, n.6 (2014) (citations and internal quotation marks omitted).

> The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:
>
> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir.2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir.2006)). If plaintiff can successfully establish the first two prongs, then the burden shifts to defendant to show that exercising jurisdiction would be unfair or unreasonable. *Id*.

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden, supra*. The court must look to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id*. (citation omitted). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden, supra* (citation omitted).

When, as here, "a nonresident defendant timely questions a federal district court's *in*

*personam* jurisdiction over it, the plaintiff asserting jurisdiction has the burden of proving that the court has jurisdiction over the defendant." *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831–32 (5th Cir.1986), on reh'g in part, 836 F.2d 850 (5th Cir.1988) (citations omitted). If the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, then plaintiff need make only a prima facie showing of the jurisdictional facts. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). In assessing whether plaintiff has made a prima facie showing, the court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Id*. (citation and internal quotation marks omitted).[5] However, the court need not credit plaintiff's conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001) (citations omitted).

b) <u>Facts</u>

In support of its motion to dismiss, Befesa submitted the declaration of Channing Durrenberger, its former Business Development Manager and General Manager. (Durrenberger Declaration; M/Dismiss, Exh. 1). Durrenberger averred that Befesa was incorporated in Delaware, with its principal place of business in Texas. *Id*. Befesa's lone office was in Houston, Texas, and all of its employees were located in that state. *Id*. Befesa, however, is no longer an active company. *Id*. Befesa does not have an office, physical,[6] or postal address in Louisiana,

---

[5] Of course, even if plaintiff were to avoid a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, it still would be required to prove the jurisdictional facts at trial by a preponderance of the evidence. *Travelers Indem. Co., supra*.

[6] However, it did rent a warehouse in Louisiana. *See infra*.

6

and never did. *Id*. Befesa never marketed or sold any products or services in Louisiana. *Id*. Rainer Goheringuer was Befesa's primary negotiator of the Contract with APL. *Id*. Allen Lenard and Adam Beasley were the primary negotiators of the Contract on behalf of APL. *Id*. The majority of negotiations concerning the Contract were conducted via email, with some in-person negotiations in Texas and in Europe. *Id*. No in-person negotiations occurred in Louisiana. *Id*. Rather, Lenard and/or Beasley traveled to Texas and Europe on multiple occasions to meet with Goheringuer to negotiate the Contract. *Id*.

In response to Befesa's motion to dismiss, APL submitted a declaration from its owner and president, A.P. Lenard. (Lenard Declaration; Pl. Opp., Exh.). Lenard averred that the Contract between APL and Befesa included a lease of immovable property for the purpose of maintaining and storing equipment for the operation of the joint venture. *Id*. Lenard stated that he met Channing Durrenberger for the first time during negotiation of the Contract in Louisiana. *Id*. He conceded, however, that Durrenberger's involvement with the negotiation process was tangential, at best. *Id*. Pursuant to the Contract, Befesa entered into a lease of immovable property in Louisiana. *Id*. The equipment used for servicing the Contract was, and still is stored at the Mansfield, Louisiana facility. *Id*. Two individuals affiliated with Befesa's parent company went to Mansfield, Louisiana and applied "BEFESA" logos and decals to the equipment, where it remains today. *Id*. The employees that worked for the joint venture, including Lenard, were all Louisiana residents. *Id*.

The Contract between APL and Befesa provides that the territorial scope of the joint venture company shall be the United States and Canada. (Contract, Clause Two). The Contract had an original term of one year, which could be extended for additional one year terms, in the absence of objection by either party. (Contract, Clause Four). The joint venture company was to

be governed by Delaware law, with each party owning a fifty percent stake. *Id*., Clause Five. The parties agreed to enter into a purchase agreement whereby Befesa was to buy shakers and centrifuges from APL for the total sum of $2,800,000. *Id*., Clause Six. The parties deemed the sale and purchase of the equipment to be "an essential condition for the effectiveness of th[e] Agreement." *Id*. The Contract also specified that Befesa would lease a warehouse from APL in Mansfield, Louisiana, at a rate of $2,000 per month. *Id*.

The Contract further contemplated that Befesa might rent the equipment that it purchased from APL to the joint venture. *Id.*, Clause Seven. The Contract required Befesa to provide the joint venture with maintenance, service, and equipment repair personnel. *Id*. APL was to select, hire, and then invoice Befesa for the cost of the personnel. *Id*. The parties agreed that the Contract was to be construed in accordance with the laws of the State of Texas. *Id*., Clause Fourteen.

    c)    <u>Analysis</u>

As an initial matter, the court acknowledges the general rule that personal jurisdiction over a nonresident corporation may not be based upon the contacts with the forum state by another corporate entity with which the nonresident corporation may be affiliated. *Freudensprung, supra*. This principle may be overcome with clear evidence showing that one corporation is the agent or alter ego of the other. *Id*. APL has not established that the joint venture company, which APL owned half of, was the alter ego of Befesa. Accordingly, the court will not attribute the Louisiana contacts of the joint venture company to Befesa.

The court also observes that while Befesa entered into an agreement with a Louisiana

entity, the meaningful face-to-face negotiations of the agreement occurred outside Louisiana.[7] Moreover, per its terms, the Contract was to be construed in accordance with the laws of Texas.[8] One of the primary objects of the Contract was the creation of a Delaware entity for purposes of engaging in the "Oil & Gas for Solids Controls" operations throughout the United States and Canada. Certainly, if the foregoing aspects of the Contract represented the full extent of Befesa's contacts with Louisiana, then this court could not exercise personal jurisdiction over Befesa.

Upon closer inspection of the Contract's terms, however, it is apparent that Befesa committed itself to the forum state with contacts that were of a more substantial and potentially enduring nature. For instance, an essential condition of the Contract was Befesa's agreement to purchase equipment from APL. Moreover, Befesa agreed to lease a warehouse from Befesa in Mansfield, Louisiana.[9] Lenard averred that Befesa stored the equipment (plausibly the same equipment that it bought from APL) used for servicing the Contract at the Mansfield, Louisiana warehouse, where it still remained as of October 2017 – more than two years later.[10] Furthermore, under the Contract, Befesa was required to provide the joint venture company with

---

[7] It is not clear which party initially approached the other concerning the proposed joint venture.

[8] The presence of a choice-of-law provision can be helpful in determining whether there is personal jurisdiction. *Renoir v. Hantman's Associates, Inc.*, 230 Fed. Appx. 357, 360 (5th Cir.2007) (citations omitted). Likewise, "a choice-of-law provision should neither be ignored nor considered sufficient alone to confer jurisdiction." *Id*. (citation omitted).

[9] Befesa argues that because the warehouse was the subject of a separate lease agreement, that contact with the forum state is unrelated to the instant cause of action. However, Befesa's argument overlooks that the Contract specifically required APL to lease Befesa a warehouse in Mansfield, Louisiana, and to enter into a lease agreement to that effect.

[10] In fact, Befesa offered to offset its remaining lease obligations at its Mansfield warehouse against the value of equipment that remained at the warehouse. (March 27, 2017, letter from A. Marin to A. Lenard; Notice of Removal, Exh. C).

maintenance, service, and equipment repair personnel, who were to be selected and hired by APL, and then billed to Befesa. Because the equipment was housed in Louisiana, Befesa clearly contemplated that the personnel it was obliged to provide to service the equipment would be performing their duties in Louisiana. Finally, in the event that the parties terminated the Contract, Befesa agreed to incorporate APL's operational team, including Allen Lenard – a known Louisiana domiciliary. (Contract, Clause Eleven).[11]

Properly aggregated, the court finds that Befesa's contacts with Louisiana cannot be characterized as "random," "fortuitous," or "attenuated." It is evident that Befesa intended to establish a long-term relationship with a Louisiana resident premised upon substantial activity in the forum state. Befesa contractually agreed to house its equipment in Mansfield, Louisiana, and to make its Louisiana-based equipment available to the joint venture company for use in its North American operations. *See Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 379–80 (5th Cir.2002), abrogated on other grounds by *Water Splash, Inc. v. Menon*, ___ U.S. ___, 137 S.Ct. 1504 (2017) (agreement to supply a vessel equipped to allow for safe discharge of the equipment in Louisiana constituted a sufficient forum-related contact to confer personal jurisdiction). Pursuant to its purposeful and potentially open-ended contacts with Louisiana, Befesa should have reasonably anticipated being haled into court in this state on a breach of contract claim, notwithstanding the Contract's Texas choice of law provision.[12] *See Cent.*

---

[11] For purposes of the second step of the specific jurisdiction inquiry, the court finds that plaintiff's cause of action and Befesa's forum-related contacts all derive from a common source: the Contract. In addition, plaintiff's claim for payments under the Contract are tied to Befesa's EBITDA from the joint venture. Befesa's contacts with Louisiana relate to the furtherance of the joint venture.

[12] The court notes that the Contract did not include a forum selection clause, and the parties were well aware of the availability of such a provision because they included one in the

*Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 383 (5th Cir.2003); *see also Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1010 (5th Cir.1982) (forum state was clearly the hub of the parties' activities, from which the forum plaintiff directed defendant's nationwide activities).

When, as here, the plaintiff has made its prima facie case that the non-resident defendant has "minimum contacts" with the forum state, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir.2006) (citation omitted). In conducting the fairness inquiry, the court considers, "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* (citation omitted). The "primary concern," however, is the burden on the defendant. *Bristol-Myers Squibb Co., supra*.

Here, although Befesa stated in its brief that the exercise of jurisdiction would be unfair and unreasonable, it did not identify or directly discuss the foregoing factors. Rather, it segued into the *forum non conveniens* component of its motion to dismiss. (M/Dismiss, Memo., pg. 8). Thus, the court will do the same. *See* discussion, *infra*. Nevertheless, to the extent that Befesa has not abandoned the fairness prong of the specific jurisdiction analysis,[13] the court further finds that consideration of the *forum non conveniens* factors do not establish that the exercise of

---

Warehouse Lease Agreement. *See* Pl. Opp., Exh. A [doc. # 16].

[13] *See Home Decor of Elmwood Oaks, LLC v. Jiyou Arts & Frames Co.*, No. 08-0762, 2009 WL 273193, at *4–5 (E.D. La. Jan. 23, 2009) (defendant did not meet its burden where it made no argument, nor offered any evidence with respect to this prong).

jurisdiction would offend "traditional notions of fair play and substantial justice." *See* discussion, *infra*.[14]

### III. *Forum Non Conveniens*

The federal doctrine of *forum non conveniens* provides that,

> when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established.

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48, 114 S.Ct. 981, 985 (1994) (citations and internal quotation marks omitted).

In other words, "the doctrine of forum non conveniens is nothing more or less than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *Id.*[15]

The Supreme Court has recognized that the "common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430,

---

[14] APL and Louisiana's interest in providing a forum for a breach of contract claim arising out of a contract with a substantial Louisiana nexus outweighs any theoretical burden on Befesa. *See Standard Fittings Co. v. Sapag, S. A.*, 625 F.2d 630, 644–45 (5th Cir.1980).

[15] Plaintiff argues that defendant waived any argument as to venue when it removed the case to federal court. Plaintiff's argument, however, misses the mark. The *forum non conveniens* doctrine does not contest that venue properly lies with this court; rather, it argues that venue is more appropriate in another forum. Therefore, removal does not cause the removing party to waive a *forum non conveniens* argument. *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835 (5th Cir.1993)

12

127 S.Ct. 1184, 1190 (2007) (internal quotation marks and citations omitted). For the federal system, Congress codified, but tweaked the doctrine to provide for transfer, in lieu of dismissal, when a sister federal court is more convenient. *Id*. (citing 28 U.S.C. § 1404(a)).

"A court facing a motion to dismiss for *forum non conveniens* must first assess whether an alternate forum is both available and adequate." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir.2000) (citation omitted). Here, Befesa contends that the most convenient forum is an unspecified Texas court. However, because Befesa seeks dismissal under *forum non conveniens*, instead of transfer under § 1404(a), the court necessarily deduces that the alternative forum is an unspecified Texas *state* court. The court will assume (for purposes of the remaining analysis) that a Texas state court is available and adequate to entertain the instant suit.

The court next must assess whether, upon consideration of certain relevant private interest and public interest factors, dismissal is warranted. *Alpine View Co., Ltd., supra*. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794–95 (5th Cir.2007) (citation omitted). The public interest factors are comprised of: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

The defendant bears the burden of proof on all elements of the *forum non conveniens* analysis. *DTEX, LLC, supra* (citation omitted). With these precepts established, the court will

13

address the relevant considerations, seriatim.

    a)    <u>Private Interest Factors</u>

        1)    *Relative Ease of Access to Sources of Proof*

Neither side adduced evidence as to where documents and physical evidence are located. Moreover, because Befesa no longer is an active company it is not known where its documents are stored. However, given that plaintiff is domiciled in this state, its documents and physical evidence are likely located here. Thus, this factor is no more than neutral in favor of dismissal.

        2)    *Availability of Compulsory Process to Secure the Attendance of Witnesses*

Defendant contends that all of its witnesses and representatives who were involved with the Contract are located in Texas or Europe, and all of its former employees reside in Texas. In support of its argument, Befesa cited Mr. Durrenberger's declaration. However, Durrenberger averred that its employees *were* locat*ed*, work*ed*, and resid*ed* in Texas. There is no indication that they still reside in Texas now that the company is defunct. Moreover, Mr. Durrenberger did not even set forth his own residence in his declaration.

Given the unknown whereabouts of defendant's material witnesses/former employees,[16] the court cannot conclude that compulsory process is any more available in the proposed forum than here. Thus, this factor is neutral.

        3)    *Cost of Attendance for Willing Witnesses*

The parties did not address this factor. Moreover, because defendant did not adduce

---

[16] The party seeking a transfer/dismissal for the convenience of witnesses must clearly specify the key witnesses and make a general statement of what their testimony will cover. *Southern Investors II v. Commuter Aircraft Corp.*, 520 F. Supp. 212, 218 (M.D. La.1981); *see also* 15 Wright, Miller & Cooper § 3851, at 425. The emphasis is not on the number of prospective witnesses, but rather on the materiality and importance of their anticipated testimony. *Young v. Armstrong World Industries, Inc.*, 601 F. Supp. 399, 401 (N.D.Tex.1984).

evidence regarding the residences of prospective witnesses or their comparative travel costs, the court concludes that this factor is no more than neutral.

> 4) *All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

Befesa seems to argue that Texas is a more convenient forum because Lenard's former business partner sued Lenard in Harris County regarding the duo's Texas operations, including operations involving Befesa. However, Befesa did not explain how the Texas litigation is pertinent to the instant suit. Moreover, because Befesa did not identify a specific Texas state court that it contends is more convenient than the instant forum, a pending suit in Harris County may be completely irrelevant. In any event, Lenard, averred that he has a suit pending against his former business partner in Louisiana state court. *See* Lenard Declaration. If Befesa wants this case and Lenard's Louisiana state court case before the same tribunal, Befesa may seek to remand this suit to state court. Thus, this factor is no more than neutral.

> b) <u>Public Interest Factors</u>
>
> 1) *Administrative Difficulties Flowing from Court Congestion*

There is no evidence that this factor is a consideration in this case. Thus, this factor is no more than neutral in favor of dismissal.

> 2) *Local Interest in Having Localized Interests Decided at Home*

This factor seeks to uphold the ideal that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir.2004) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S.Ct. 839 (1947)). Here, however, neither side has requested a jury. In any

15

event, there is no evidence that a Texas jury has an interest in deciding a dispute between a Louisiana company and an inactive Texas company. In contrast, this community maintains an interest in the matter because plaintiff's sole member is domiciled here. Accordingly, this factor counsels against transfer.

> 3 & 4) *Familiarity of the Forum with the Law That Will Govern the Case; and the Avoidance of Unnecessary Problems of Conflict of Laws [Or In] the Application of Foreign Law*

The Contract provides that it shall be construed in accordance with Texas law. Certainly, if the court were to credit that provision, then a Texas court would be more familiar with substantive Texas law. However, principles of contract interpretation are generally consistent across jurisdictions. Moreover, the undersigned is confident that able counsel will be able to brief the court on applicable Texas law, as needed. Thus, this factor but slightly favors the Texas forum.

In sum, the court finds that no more than one factor favors a Texas forum. The remaining factors are either neutral or favor the present forum. Under these circumstances, defendant has not satisfied its heavy burden in overturning plaintiff's chosen forum. *See Sinochem Int'l Co. Ltd., supra* ("heavy burden").

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that plaintiff's motion to remand [doc. # 11] and defendant's compound motion to dismiss for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), or alternatively, for *forum non conveniens* [doc. # 13] both be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific,

written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 8th day of November 2017.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE